# United States District Court, Northern District of Illinois

QS-6

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6468 | **DATE** | July 30, 2002 |
| **CASE TITLE** | *Mary Kay Crosson vs. Caremark, Inc.* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The court grants defendant's motion for summary judgment [11-1]. Final judgment in this case is entered in favor of defendant Caremark, Inc., and against plaintiff Mary Kay Crosson. No motions for reconsideration will be entertained.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JUL 31 2002 | |
| | Notified counsel by telephone. | | date docketed | 36 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CW | courtroom deputy's initials | 02 JUL 30 PM 5:45 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |


IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARY KAY CROSSON, )
)
    Plaintiff, )
)
v. ) Case No: 01 C 6468
)
CAREMARK, INC., ) Judge James H. Alesia
)
    Defendant. )

### MEMORANDUM OPINION AND ORDER

Before the court is defendant Caremark, Inc.'s motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the court grants defendant's motion for summary judgment.

### I. BACKGROUND[1]

Plaintiff Mary Kay Crosson ("Crosson") brings this suit, claiming that defendant Caremark, Inc. ("Caremark") is liable for sexual harassment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") Particularly, Crosson claims that Caremark is liable for a single sexually harassing act committed by her supervisor, Charles Krause ("Krause").

In January 1994, plaintiff Mary Kay Crosson ("Crosson") began to work for Caremark. In October 1999, she was promoted to Manager of Contract Administration, a position that she

---

[1] Unless otherwise indicated, the following facts – taken from the parties' Local Rule 56.1 statements are undisputed.

continues to hold. From February 2000 until April 23, 2001, Crosson reported directly to Charles Krause ("Krause"), who is Vice President of Underwriting at Caremark. Both Crosson and Krause report to George Hepburn ("Hepburn"), Senior Vice President of Finance and Development at Caremark.

On April 6, 2001, Crosson and Krause were driving to Caremark's Northbrook office in Krause's car, following a business trip. During that ride, the two had the following conversation:

| | |
|---|---|
| Krause: | "Well, I thought the conference went well. I am a bit confused." |
| Crosson: | "What is it you are confused about?" |
| Krause: | "Well, there is something about how our body language communicates that confuses me." |
| Crosson: | "Wait a minute, let me clarify. Do you mean to tell me that something I am doing with my body language confuses you?" |
| Krause: | "No, this is all me. This is all me." |
| Crosson: | "This is exhausting me. You know, I don't know what to do." |
| Krause: | "You have to understand. This is very difficult for me to say because I am your boss. You have no idea what I am talking about, do you?" |
| Crosson: | "No, I do not." |
| Krause: | "I have embarrassed you and I apologize. At this point, I am going to stop this conversation to retain what little dignity I have left."[2] |

This conversation is the only sexually-harassing act to which Crosson claims that she was subjected. Crosson believed Krause was making a sexual advance towards her during this conversation, and she was concerned about her future at Caremark after she refused his advance. Krause did not tell her that she would suffer any job detriment if she did not accept his advance.

On April 10, 2001, Crosson and Krause had a conversation in Krause's office. At that time, Crosson told Krause that she did not want to report to him anymore, and that she wanted

---

[2]These quotations constitute the essence of the conversation that took place in Krause's car and not a verbatim account of that conversation. (Pl.'s Loc. Rule 56.1 Statement ¶¶ 27-34.)

to report to someone else. Krause informed Crosson that she had three options: (1) file a sexual harassment claim with the Human Resources Department; (2) be reassigned to a different supervisor; or (3) forget the whole thing.

The next day, Krause reported the situation to Jackie Ottoson ("Ottoson"), a Vice President of Human Resources at Caremark. He told her about both his April 6 and his April 10 conversations with Crosson. Ottoson and Joanne Carlson ("Carlson"), a Manager of Human Resources, began an investigation into the situation and interviewed Crosson that same day. During the interview, Crosson told them that she did not want to report to Krause any longer, and suggested that she report to Joel Saban ("Saban"), instead.

On April 23, 2001, Carlson and Hepburn told Crosson that the incident between her and Krause had been investigated. They informed her that she would no longer report to Krause, and that she temporarily would report to Hepburn. At the end of May 2001, Crosson was reassigned to report to Saban. Despite these changes in Crosson's reporting structure, she maintained the same job title, responsibilities, salary, and status throughout the course of these events.

On May 14, 2001, Crosson filed a charge with the Equal Employment Opportunity Commission ("EEOC"). She received a notice of her right to sue from the EEOC on May 24, 2001. Crosson filed this lawsuit on August 20, 2001, within the required 90 days of receiving her right to sue letter. In her one-count complaint, Crosson claims that her April 6, 2001 conversation with Krause in his car and the subsequent events constituted quid pro quo sexual harassment, in violation of Title VII. She alleges that Krause's comments constituted an unwelcome sexual advance and that, as a result, she has suffered extensive damage to her

professional reputation at Caremark as to constitute a tangible employment action. The court has subject matter jurisdiction over this case under 28 U.S.C. § 1331 because this case arises under a federal statute. Caremark now moves for summary judgment arguing that Crosson cannot establish a *prima facie* case for quid pro quo sexual harassment. Additionally, Caremark has filed three motions *in limine*.

## II. DISCUSSION

### A. Motions *in Limine*

As a threshold matter, the court will dispose of Caremark's motions *in limine*. Caremark seeks exclusion of the following: (1) evidence concerning complaints made by two other women about Krause; (2) evidence regarding defendant's answers to plaintiff's first set of interrogatories; and (3) Hepburn's testimony regarding his loss of respect for Crosson. The court will address each motion in turn.

#### 1. Evidence regarding the complaints of Bravos and Watson

Caremark argues that evidence regarding the complaints of Phyllis Bravos and Sue Watson – two women who complained that Krause had difficulty working with women – should be excluded as irrelevant because it is unrelated to the elements of Crosson's *prima facie* case and because there is no evidence that these complaints involved sexual harassment. Crosson does not maintain that this evidence is relevant to her *prima facie* case, but only argues that the evidence is relevant to the *Faragher* affirmative defense that Caremark could raise at trial.

In *Faragher v. City of Boca Raton*, the Supreme Court held that an employer facing liability for a supervisor's act of sexual harassment may raise an affirmative defense to that

4

liability by arguing that it took reasonable care to prevent and correct any sexually harassing behavior. 524 U.S. 775, 807 (1998). In this case, Caremark did not assert the *Faragher* affirmative defense in its answer and states that it does not need to assert that affirmative defense because, it argues, Crosson cannot prove her *prima facie* case. (Def.'s Reply in Supp. of its Mot. for Summ. J. at 11.) Because Caremark does not intend to assert this defense, Crosson's argument fails. Therefore, the court finds that the evidence of the complaints of Bravos and Wilson is irrelevant and grants Caremark's motion *in limine.*

2. **Evidence regarding Caremark's answers to plaintiff's first set of interrogatories**

Caremark argues that its own answers to Crosson's first set of interrogatories should be barred from evidence because those interrogatories were drafted vaguely. It argues that the court should prevent Crosson from presenting "some different interpretation of the interrogatories based upon the ambiguities she created in drafting them." (Def.'s Mem. in Supp. of its Mot. *in limine*, pg. 8.)

Caremark provides no authority – and the court's own research did not reveal any – to support its argument that its own answers to the interrogatories should be excluded. As a general rule, a federal district court is limited to excluding, *in limine* only such evidence that is "clearly inadmissible on all possible grounds." *Anglin v. Sears, Roebuck & Co.*, 139 F. Supp. 2d 914, 917 (N.D. Ill. 2001). Because the court cannot conclude that Caremark's answers to plaintiff's first set of interrogatories are clearly inadmissible, Caremark's motion *in limine* is denied.

5

### 3. Evidence regarding Hepburn's lessening of respect for plaintiff

Caremark argues that Hepburn's testimony regarding his loss of respect for Crosson should be excluded as irrelevant. Crosson argues that the statement provides evidence that her professional reputation has been damaged.[3] For reasons explained *infra* Sect. II.D.2.c., the court finds that Hepburn's testimony – even if admissible – does not support a reasonable conclusion that she suffered a tangible employment action that supports her *prima facie* case for sexual harassment. Therefore, the court need not address the admissibility of Hepburn's testimony. Accordingly, Caremark's motion *in limine* is denied as moot.

### B. Summary Judgment Standard

Summary judgment is appropriate only where "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Funeral Fin. Sys. v. United States*, 234 F.3d 1015, 1017 (7th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). A genuine issue of material fact exists when, viewing the record and drawing all reasonable inferences in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Smith v. Severn*, 129 F.3d 419, 425 (7th Cir. 1997).

---

[3] Crosson also argues that Hepburn's statement is evidence that would help her refute Caremark's *Faragher* defense. Because the court has already noted *supra* Sect. II.A.1 that Caremark does not intend to raise the *Faragher* defense, the court need not consider this argument by Crosson.

6

The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex,* 477 U.S. at 325 (noting also that "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."). Once the moving party makes a *prima facie* showing that it is entitled to judgment as a matter of law, the non-moving party must set forth specific facts showing that a genuine issue for trial exists. *Id.* at 324; *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir. 1989). The non-moving party cannot rest on the pleadings alone, but must designate *specific facts* in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. *Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir. 1992). The non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson,* 477 U.S. at 252.

Caremark argues that it is entitled to summary judgment in this case because Crosson cannot establish a *prima facie* case for sexual harassment.

### C. The *Prima Facie* Case for Sexual Harassment

Title VII prohibits an employer from discriminating against an employee with respect to compensation, terms, conditions, or privileges of employment because of the employee's sex. *Wolf v. N.W. Ind. Symphony Society,* 250 F.3d 1136, 1141 (7th Cir. 2001) (quoting 42 U.S.C.

§ 2000e-2(a)(1)). Title VII's prohibition against sex discrimination also protects employees from sexual harassment. *Simon v. City of Naperville*, 88 F. Supp. 2d 872, 874 (N.D. Ill. 2000) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986); *Bryson v. Chicago State Univ.*, 96 F.3d 912, 915 (7th Cir. 1996)).

Quid pro quo sexual harassment occurs "when tangible employment benefits are conditioned upon one's compliance with a harasser's sexual demands." *Urban v. Blossom Hill Health Centre, Inc.*, No. 97 C 5507, 2000 WL 1262937, at *9 (N.D. Ill. Aug. 31, 2000) (citing *Brill v. Lante Corp.*, 119 F.3d 1266, 1276 (7th Cir. 1997)). According to the EEOC Guidelines on sexual harassment:

> Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, [or] (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual.

29 C.F.R. § 1604.11(a). The Seventh Circuit has noted that a five-part test provides a "useful framework" for evaluating quid pro quo sexual harassment claims. *Bryson*, 96 F.3d at 916. According to that test, in order to prove a *prima facie* case for quid pro quo sexual harassment, a plaintiff must show that (1) she is a member of a protected group; (2) the sexual advances were unwelcome; (3) the harassment was sexually motivated; (4) her reaction to the advances affected a tangible aspect of her employment; and (5) respondeat superior has been established.[4] *Id.* at

---

[4]In 1998, the Supreme Court decided two cases that clarified the rules courts should apply to determine whether employers are liable for sexual harassment committed by supervisory personnel. *See Burlington Indus. v. Ellerth*, 524, U.S. 742, 760-65 (1998); *Faragher*, 524 U.S. (continued...)

8

915. Caremark argues that Crosson has not proven that: (1) Krause's statements to Crosson in the car constituted a sexual advance; (2); the alleged harassment was sexually-motivated and (3) Crosson's reaction to the advances affected a tangible aspect of her employment.

D. **Tangible Employment Action**

The court will first address whether Crosson has established that her reaction to Krause's alleged advance affected a tangible aspect of her employment. As discussed below, even assuming that Krause's statements to Crosson in the car constituted a sexual advance and that the alleged harassment was sexually-motivated, Crosson cannot establish a *prima facie* case because she cannot establish that she suffered a tangible employment action.

Caremark argues that Crosson's rejection of Krause's alleged sexual advance did not cause her to suffer a tangible employment action. Crosson responds that the irreparable damage to her professional reputation and the limitation of her future opportunities at the company constitute tangible employment actions.

The Supreme Court has held that "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."

---

[4](...continued)
at 807. In those decisions, the Court downplayed the traditional distinction between the two categories of sexual harassment – hostile work environment and quid pro quo – for purposes of determining when an employer is liable. However, in *Ellerth*, the Court noted that the distinction between quid pro quo and hostile work environment harassment remains relevant in determining whether the plaintiff can establish a *prima facie* case. *Ellerth*, 524 U.S. at 753. Therefore, the court will apply the traditional analysis to determine whether Crosson can establish a *prima facie* case for quid pro quo sexual harassment.

*Ellerth*, 524 U.S. at 761. A tangible employment action "is the means by which the supervisor brings the official power of the enterprise to bear on subordinates. A tangible employment decision requires an official act of the enterprise, a company act." *Wolf*, 250 F.3d at 1142 (citing *Ellerth*, 524 U.S. at 762). It is true that a wide variety of actions, both blatant and subtle, can constitute tangible employment actions. *Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 753 (7th Cir. 2002). In determining whether an employee has suffered a tangible employment action, a court should consider both qualitative and quantitative changes in the terms and conditions of employment. *Id.* However, although tangible employment actions "extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996).[5]

In this case, there is no evidence of any official action by Caremark against Crosson that materially changed her employment status. The only official acts that Caremark took with regard to Crosson were: (1) temporarily reassigning Crosson to report directly to Hepburn and (2) subsequently permanently reassigning Crosson to report to Saban. The court notes that this reassignment was in compliance with Crosson's request to Carlson and Ottoson in the Human

---

[5]The Seventh Circuit has looked to cases involving adverse employment actions in other types of Title VII cases when determining whether a tangible employment action took place in a quid pro quo sexual harassment case. *See Murray v. Chicago Transit Auth.*, 252 F.3d 880, 888 (7th Cir. 2001) (citing "adverse employment action" cases in determining whether plaintiff had established a tangible employment action in a quid pro quo case); *Savino v. C.P. Hall Co.*, 199 F.3d 925, 932 n.8 (7th Cir. 1999) ("Thus, a tangible employment action is akin to an adverse employment action, as courts have used the term."). Therefore, the court will include decisions involving determinations of what constitutes an "adverse employment action" in its analysis of whether Crosson has established a tangible employment action in this case. When discussing those cases, the court will use the terms "adverse employment action" and "tangible employment action" interchangeably.

Resources Department that her reporting relationship be changed. (Pl. Dep. 106:14-16.) Crosson's job title, pay, and responsibilities all remained the same. Crosson does not allege that the changes in her reporting assignment constituted an adverse employment action.

Instead, Crosson argues only that damage to her reputation and future with Caremark constitutes a tangible employment action and that damage resulted from her rejection of Krause's alleged sexual advance. First, the court will address Crosson's argument that damage to her future at Caremark constituted a tangible employment action, and second, will address her argument that damage to her professional reputation constituted a tangible employment action.

### 1. **Impairment of future job opportunities**

First, the Seventh Circuit has stated that "an employer's deliberate denial of career opportunities could constitute an adverse employment action." *Patt*, 280 F.3d at 753. However, the court has also required plaintiffs claiming that their employer denied them career opportunities to provide evidence of the opportunities that they have been denied. *Id.* In this case, Crosson provides no such evidence. Furthermore, she provides no evidence of any actions by Caremark that have denied her any career opportunities. Instead, she merely speculates that her refusal of Krause's alleged sexual advance could have negative implications for her future at Caremark. Crosson's unsupported speculation that she could be harmed in the future cannot support a conclusion that she suffered a tangible employment action. *Traylor v. Brown*, — F.3d —, No. 01-2542, 2002 WL 1484483, at *4 (7th Cir. July 12, 2002). The court finds that Crosson has not shown that her future at Caremark has been affected in any tangible way. Accordingly, the court concludes that she has failed to provide evidence that would allow a

11

reasonable jury to conclude that she has suffered a tangible employment action, based upon damage to her future at Caremark.

### 2. Damage to professional reputation

Second, courts have entertained arguments that damage to one's professional reputation may constitute a tangible employment action. *See Patt*, 280 F.3d at 751 (considering plaintiff's allegations that she was, among other things, subjected to efforts to "tarnish her professional reputation" when determining if she could prove that she suffered an adverse employment action). *See also Mohan v. Am. Tel. & Tel. Co.*, No. 97 C 7067, 1999 WL 495113, at *15 (N.D. Ill. June 30, 1999) (considering plaintiff's allegation that her reputation was damaged in determining whether plaintiff suffered an adverse employment action). In support of her argument that her reputation at Caremark has been damaged, Crosson points to three pieces of evidence: (1) a February 2000 conversation between her and Krause, in which Krause threatened her job; (2) a conversation between Krause and another Caremark employee, in which Crosson claims Krause "disparaged" her to the other employee; and (3) testimony by Hepburn that he has lost respect for Crosson. The court will review each of Crosson's arguments in turn.

#### a. The February 2000 conversation between Crosson and Krause

In February 2000, Krause told Crosson that: (1) he wanted to give her job to Jordan Knopoff ("Knopoff"); (2) he planned to move her to another position but was not sure what position that would be; and (3) he wanted her to write a job description for herself and describe what her responsibilities would be if Knopoff were Contract Administration Manager. (Pl.'s Ex. O.) Crosson argues that this conversation, combined with her perceived shortcomings in

12

Caremark's investigation, was evidence that Krause was planning to undermine her professional reputation and that Caremark was taking his side. She argues that this evidence, taken together, provides the basis for her concern about her future at Caremark. Caremark raises objections to Crosson's evidentiary support for this conversation. However, even if the court considers Crosson's evidence, it would find her arguments unpersuasive, for reasons explained below.

Crosson argues that this encounter made her afraid that Krause was going to ruin her career, and that those fears have been intensified since she refused his sexual advance. However, she provides no authority – nor has the court's own research revealed any – to support her position that the February 2000 conversation between her and Krause could constitute a tangible employment action. However, even assuming that the conversation could provide evidence that Crosson's reputation was being damaged, Crosson provides no evidence to allow a reasonable jury to conclude that there was any connection between her rejection of Krause's alleged advance and the February 2000 conversation between her and Krause. *See Urban*, 2000 WL 1262937, at *10 (holding that plaintiff's quid pro quo sexual harassment claim failed because plaintiff failed to establish a link between the tangible job consequence and the harasser's sexual demands) (citing *Heuer v. Weil-McLain*, 203 F.3d 1021, 1022-23 (7th Cir. 2000)). *See also Bryson*, 96 F.3d at 915 ("[A]sking whether the plaintiff has shown ... the employee's reaction to the supervisor's advances affected a tangible aspect of her employment"). In fact, the court notes, this conversation occurred almost seventeen months prior to Krause's alleged advance. Because Crosson does not establish any connection between Krause's February 2000 statements

and his alleged sexual advance, the court cannot conclude that Crosson's reputation was damaged as a result of the February 2000 conversation between her and Krause.

### b. Krause's conversation with Gierat

Second, Crosson claims that her reputation at Caremark was damaged when Krause "disparaged her" to Jack Gierat ("Gierat"), another Caremark employee. (Pl.'s Resp. to Def.'s Summ. J. Mot..) In May 2001, Krause and Gierat had a conversation regarding Crosson. Gierat asked Krause about a "buzz" regarding Crosson in the building, and Krause told Gierat that there was some "stuff going on" that Krause was not happy about, and put Crosson in a negative light during this conversation. He told Gierat that Crosson had gone to the Human Resources Department regarding Krause.[6]

Crosson provides no authority to support her argument that such a conversation could damage her reputation in a way that could constitute a tangible employment action. An employee's disparaging comments about another employee can provide evidence of an adverse employment action when those comments result in the subject of the comments being fired or denied a promotion by someone who hears those comments. *See Naeem v. McKesson Drug Co.*, No. 95 C 5425, 2000 WL 1720965, at *3 (N.D. Ill. Nov. 16, 2000) (stating that, where retaliation plaintiff was disparaged by alleged harasser to decision-making employee, and plaintiff was

---

[6]In Crosson's response to defendant's summary judgment motion, she argues that Krause told Gierat "to stay away from Plaintiff and that she was trouble." (Pl.'s Resp. to Def.'s Summ. J. Mot..) However, this argument is unsupported by the paragraphs of her Local Rule 56.1 Statement that she cites.

14

subsequently denied a promotion, disparaging comments could provide evidence of a causal connection between plaintiff's protected conduct and the denial of her promotion).

The record does not support Crosson's assertions that Krause's comments to Gierat diminished her reputation in Gierat's eyes, much less at Caremark. Crosson provides no evidence to contradict Gierat's testimony that he did not develop a negative impression of Crosson as a result of Krause's statement and that he received the impression that Krause had made a comment to Crosson and that she had taken it the wrong way. (Gierat Dep. 22:3-11; 24:3-6.) Consequently, the court is unpersuaded by Crosson's arguments that Krause's conversation with Gierat damaged her professional reputation so as to constitute an adverse employment action.

In this case, Crosson does not argue that she suffered any material change in the terms and conditions of her employment at all, much less as a result of the conversation between Krause and Gierat. Furthermore, she does not argue that Gierat possessed the authority or ability to bring about such a change. Crosson has failed to establish a link between the allegedly disparaging comments and some material change in her employment. Therefore, the court cannot conclude that Krause's conversation with Gierat damaged her reputation so as to constitute a tangible employment action.

### c. Hepburn's testimony that he has lost respect for Crosson

Third, Crosson argues that Hepburn's deposition testimony that he lost respect for her evidences the damage to her professional reputation. In support of her argument, she cites to the following excerpt from Hepburn's deposition:

15

> Q: Did you ever tell Mr. Krause that you were struggling to find any respect for [Crosson]?
> A: Since the filing of the lawsuit, I have found that I have similar thoughts for employees that sue their employers, and I did make that comment.

(Hepburn Dep. 116:21-24; 117:1-3.) Plaintiff provides no authority to support her argument – nor does the court's own research reveal any – that a mere loss of respect by a superior constitutes a tangible employment action. However, even if such a loss of respect could constitute a tangible employment action, a plaintiff in a quid pro quo case must show some link between the alleged sexual advance and the tangible job consequence. *See Urban*, 2000 WL 1262937, at *10 (citing *Heuer*, 203 F.3d at 1022-23). Hepburn's words indicate that any loss of respect that he felt with regard to Crosson was causally linked to her filing of this lawsuit. Therefore, the court finds that Hepburn's testimony does not support a reasonable inference that Hepburn lost respect for Crosson as a result of her refusing Krause's alleged sexual advance. Accordingly, the court concludes that Crosson has not established the necessary link between Krause's alleged advance and Hepburn's loss of respect for her. Consequently, she has failed to establish that a reasonable jury could conclude that Hepburn's loss of respect for her constitutes a tangible employment action that supports her *prima facie* case for sexual harassment.

The court concludes that Crosson has failed to establish that any harm was done to her professional reputation. Without showing that she has suffered any harm, Crosson's unsubstantiated speculation that her professional reputation and her future at Caremark have been damaged cannot establish that she suffered a tangible employment action. *See Traylor v.*

16

*Brown*, — F.3d —, 2002 WL 1484483, at *4. Therefore, the court finds that she has failed to establish that she suffered a tangible employment action.[7]

Because Crosson cannot prove that she suffered a tangible employment action, the court finds that she cannot prove a *prima facie* case for quid pro quo sexual harassment. Consequently, the court grants Caremark's motion for summary judgment and need not address the parties' remaining arguments. *See Wolf*, 250 F.3d at 1143-44 (affirming grant of summary judgment in sexual harassment case where plaintiff could not establish a tangible employment action and that she was not subjected to a sexually harassing work environment); *Accord Mosher v. Dollar Tree Stores, Inc.*, 240 F.3d 662, 666-68 (7th Cir. 2001).

### III. CONCLUSION

For the foregoing reasons, the court grants defendant's motion for summary judgment. Final judgment is entered in favor of defendant Caremark, Inc. and against plaintiff Mary Kay Crosson.

Date: **JUL 3 0 2002**

James H. Alesia
United States District Judge

---

[7] Crosson's remaining arguments that she suffered a tangible employment action address the adequacy of Caremark's response to her complaints regarding Krause. She provides no authority – nor does the court's own research reveal any – to support her contention that an inadequate investigation of a sexual harassment case can constitute an adverse employment action. Furthermore, Crosson does not provide any evidence – other than her being reassigned, in accordance with her wishes – that Caremark's investigation of her complaint has materially affected the terms, conditions, or benefits of her employment. Additionally, the court has already noted, *supra* Sect. II.A.1 that Caremark is not raising an *Ellerth* affirmative defense in this case. Therefore, evidence and arguments regarding the adequacy or reasonableness of Caremark's investigation are irrelevant.